## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

FAISAL KHAN,                                    Case No. 1:10-cv-118
      Plaintiff,                            Weber, J.
                                                Litkovitz, M.J.

    vs.

CELLCO PARTNERSHIP                              **REPORT AND**
d/b/a VERIZON WIRELESS,                         **RECOMMENDATION**
      Defendant.


This matter is before the Court on defendant's motion to disqualify counsel (Doc. 20),

plaintiff's memorandum in opposition (Doc. 21), and defendant's reply memorandum in support

of its motion for disqualification. (Doc. 22). Defendant Verizon seeks disqualification of

plaintiff's counsel and the law firm of Freking & Betz on the basis of a conflict of interest

existing between Freking & Betz and one of its former clients, Verizon employee Jill Wiles, who

is a witness in this matter. For the reasons that follow, the Court recommends that the motion to

disqualify counsel be granted.[1]

### BACKGROUND

Plaintiff Faisal Khan, a former employee of Verizon Wireless, brings this action alleging

discrimination in employment based on race, national origin, and religion in violation of Title VII

of the Civil Rights Act, 42 U.S.C. § 2000 *et seq*., and Ohio law. On January 22, 2010, plaintiff

Khan filed suit against Verizon through counsel George M. Reul, Jr. and Jon B. Allison of the

law firm of Freking & Betz.

---

[1] The Court determines that oral argument is not necessary in the resolution of the instant motion and denies
plaintiff's request for oral argument.

From January 2007 until Mr. Khan's termination on October 21, 2008, Jill Wiles, a Major Account Manager for Verizon, reported directly to plaintiff Khan, who was Verizon's Associate Director for Strategic Sales. (Doc. 20, Exh. A, Wiles Decl.). Wiles alleges that during the period of time that she reported to Khan, she was subjected to Khan's inappropriate behaviors and communications in the workplace, including conversations regarding sex, offensive language regarding female employees, and inappropriate touching by Khan on one occasion. *Id.* Wiles complained about Khan's behavior to Verizon in early October 2008 and began looking for an attorney to represent her on her potential claims against Khan and Verizon based on Khan's actions. In October of 2008, prior to Khan's termination, Wiles went to the law firm of Freking & Betz and met with attorney Randolph Freking. *Id.* Wiles states that she disclosed confidential information to Mr. Freking and discussed in detail Khan's inappropriate behavior in the workplace. *Id.* She also states that Mr. Freking took notes during the meeting and advised her regarding her potential claims against Khan and Verizon. *Id.* Wiles paid Mr. Freking $200.00 for his legal advice. (Doc. 20, Exh. A, Wiles Decl., Exh. 1).

In February 2011, in the course of preparing Wiles and other Verizon employees to be deposed by lawyers from Freking & Betz in the present litigation, counsel for defendant Verizon learned of Wiles' meeting with Mr. Freking in October 2008. (Doc. 20, Exh. B, Bryant Decl.). Wiles has advised Verizon that she is not willing to waive the attorney-client privilege created by the previous attorney-client relationship between her and Mr. Freking. (*Id.*; Doc. 20, Exh. A, Wiles Decl.).

In March 2011, Verizon's counsel notified Freking & Betz of the conflict of interest between its present representation of plaintiff Khan and its previous representation of Verizon

employee Jill Wiles. (Doc. 20, Exh. B, Bryant Decl.). Verizon requested that the firm withdraw

from the case. *Id.* Upon Freking & Betz's refusal to withdraw, Verizon filed its motion to

disqualify plaintiff's attorneys.

## LEGAL STANDARD

In contrast to its previous practice of relying on common-law precedent, the Sixth Circuit

now relies primarily on the codified Rules of Professional Conduct in determining questions of

lawyer disqualification in a given case.[2] *See National Union Fire Ins. Co. of Pittsburgh, Pa. v.*

*Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436

(6th Cir. 2007) ("applying these accepted rules will lead to greater uniformity and predictability

with regard to the ethical code of conduct"). For purposes of this case, the Ohio Rules of

Professional Conduct govern whether disqualification of counsel is warranted because of a

conflict of interest arising from the representation of a former client. *See OneBeacon America*

*Ins. Co. v. Safeco Ins. Co.*, 1:07-cv-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008)

(Weber, J.) (citing *Yates v. Dicks*, 209 F.R.D. 143, 150 (S.D. Ohio 2002) (Spiegel, J.)). *See also*

S.D. Ohio Civ. R. 83.3(f) (providing that the conduct of attorneys and the supervision of their

conduct in this Court "shall be governed by the Model Federal Rules of Disciplinary

---

[2] For this reason, the Court declines plaintiff's invitation to apply the three factor common law test set forth in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990), which provides for disqualification where (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. The undersigned also notes that this Court has not applied the *Dana* test in two recent cases addressing attorney disqualification issues. *See R.E. Kramig Co., Inc. v. Resolute Management, Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (Dlott, C.J.); *OneBeacon America Ins. Co. v. Safeco Ins. Co.*, 1:07-cv-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (Weber, J.).

3

Enforcement," which in turn provide that this Court abides by "the Code of Professional

Responsibility adopted by the highest court of the state in which this Court sits.").[3]

The duty of a lawyer to a former client is governed by Ohio R. Prof. Conduct 1.9, which

provides:

RULE 1.9: DUTIES TO FORMER CLIENTS

(a) Unless the former client gives informed consent, confirmed in writing, a
lawyer who has formerly represented a client in a matter shall not thereafter
represent another person in the same or a substantially related matter in which that
person's interests are materially adverse to the interests of the former client.

(b) Unless the former client gives informed consent, confirmed in writing, a
lawyer shall not knowingly represent a person in the same or a substantially
related matter in which a firm with which the lawyer formerly was associated had
previously represented a client where both of the following apply:

(1) the interests of the client are materially adverse to that person;

(2) the lawyer had acquired information about the client that is protected by Rules
1.6 and 1.9(c) and material to the matter.

(c) A lawyer who has formerly represented a client in a matter or whose present or
former firm has formerly represented a client in a matter shall not thereafter do
either of the following:

(1) use information relating to the representation to the disadvantage of the former
client except as these rules would permit or require with respect to a client or
when the information has become generally known;

(2) reveal information relating to the representation except as these rules would
permit or require with respect to a client.

Ohio R. Prof. Conduct 1.9.

---

[3] Ohio adopted the Rules of Professional Conduct in 2007 to replace the Ohio Code of Professional Responsibility.
*See Carnegie Cos., Inc. v. Summit Properties, Inc.,* 918 N.E.2d 1052, 1060 (Ohio App. 9th Dist. 2009).

"The use of the term 'shall' in Rule 1.9(a) requires mandatory disqualification when those circumstances defined therein are present." *R.E. Kramig Co., Inc. v. Resolute Management, Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (Dlott, C.J.) (citing *OneBeacon*, 2008 WL 4059836, at *2). The term "substantially related matter" as used in Rule 1.9(a) is defined as "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Conduct 1.0(n).

The Ohio Rule of Professional Conduct governing the disqualification of law firms is found in Rule 1.10: IMPUTATION OF CONFLICTS OF INTEREST: GENERAL RULE:

> (a) While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> (b) When a lawyer is no longer associated with a firm, no lawyer in that firm shall thereafter represent a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, if the lawyer knows or reasonably should know that either of the following applies:
>
> (1) the formerly associated lawyer represented the client in the same or a substantially related matter;
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) When a lawyer has had substantial responsibility in a matter for a former client and becomes associated with a new firm, no lawyer in the new firm shall knowingly represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.

5

(d) In circumstances other than those covered by Rule 1.10(c), when a lawyer becomes associated with a new firm, no lawyer in the new firm shall knowingly represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:

(1) the new firm timely screens the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;

(2) written notice is given as soon as practicable to any affected former client.

(e) A disqualification required by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

(f) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

Ohio R. Prof. Conduct 1.10.

## ANALYSIS

Under Ohio Rules of Professional Conduct 1.9(a) and 1.10(a), disqualification of the Freking & Betz law firm is warranted due to the conflict of interest arising from counsel's legal advice to Ms. Wiles on a matter substantially related to the instant case. Under Rule 1.10(a), if any one attorney from Freking & Betz is disqualified under Rule 1.9, then the entire firm must be disqualified from representation. Because Randolph Freking would be disqualified under Rule 1.9(a) from representing Mr. Khan by virtue of his previous representation of Ms. Wiles, then Messrs. Reul and Allison, as well as the entire firm of Freking & Betz, are disqualified from representing Mr. Khan under Rule 1.10(a).

### A. Ohio Rule of Professional Conduct 1.9(a) Prohibits Randolph Freking From Representing Plaintiff Khan.

Ohio Rule 1.9(a) prohibits a lawyer from representing a client in a matter substantially related to a matter involving another client where that person's interests are materially adverse to

6

the interests of the former client. A substantially related matter "involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Cond. 1.0(n). Knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude representation, and the nature of the services performed for the former client is enough to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. Ohio R. Prof. Cond. 1.9, Comment (3). The burden of proof lies with the party seeking disqualification, who need only show that the matter or cause of action of the previous representation of the former client is substantially related to the matters of the current suit. *OneBeacon*, 2008 WL 4059836, at *3.

In the instant case, there is no question that Ms. Wiles was a former client of Randolph Freking. "An attorney-client relationship includes the representation of a client in court proceedings, *advice to a client*, and any action on a client's behalf that is connected with the law." *Hamrick v. Union Tp., Ohio*, 79 F. Supp.2d 871, 875 (S.D. Ohio 1999) (emphasis added) (citing *Landis v. Hunt*, 610 N.E.2d 554, 558-59 (Ohio App. 10th Dist. 1992)). The test of whether an attorney-client relationship was created is essentially "whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." *Id.* (citing *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 611 N.E.2d 873, 876 (Ohio App. 6th Dist. 1992)). "An essential element as to whether an attorney-client relationship has been formed is the 'determination that the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus,

7

the information exchanged was so confidential as to invoke an attorney-client privilege.'" *Id.*

(quoting *Landis*, 610 N.E.2d at 558). Even where an attorney cannot recall the specifics of the

discussions with the client, the rendering of legal advice to the client establishes an attorney-

client relationship as a matter of law. *Hamrick*, 79 F. Supp.2d at 875.

In October 2008, Ms. Wiles consulted Mr. Freking for advice on her potential claims

against Verizon and Khan based on what she described as Khan's inappropriate sexual comments

and behavior in the workplace. Ms. Wiles avers that she disclosed confidential information to

Mr. Freking and that Mr. Freking advised her of her potential legal claims. (Doc. 20, Exh. A). It

is undisputed that Ms. Wiles paid Mr. Freking $200 and received legal advice in return. (Doc. 21

at 2). The Court determines that Ms. Wiles' consultation with Mr. Freking constitutes a

relationship of trust and confidence such that the communication imparted by Ms. Wiles to Mr.

Freking is protected by the attorney-client privilege, and the giving of legal advice by Mr.

Freking created an attorney-client relationship with Ms. Wiles. *See Hamrick*, 79 F. Supp.2d at

875. *See also Southern Elec. Supply Co., Inc. v. Lienguard, Inc.*, No. 2:05-cv-442, 2007 WL

4224225, at *5 (S.D. Ohio Nov. 7, 2007) (attorney-client relationship may be established by

existence of a contractual agreement). Even where the Court does not know the precise nature of

the discussions between an attorney and the client, the information disclosed qualifies as

attorney-client communications which are protected by the attorney-client privilege. *See United

States v. Warshak*, No. 1:06-cr-00111, 2007 WL 4591208, at *4 (S.D. Ohio Dec. 28, 2007).

Thus, an attorney-client relationship between Ms. Wiles and Mr. Freking is established for

purposes of Rule 1.9(a).

8

In addition, plaintiff Khan's interests in this matter are clearly "materially adverse" and "substantially related" to the matter for which Ms. Wiles received legal advice in 2008 for purposes of disqualification under Rule 1.9(a). While both involve the same transactions or incidents during Mr. Khan's employment with Verizon, both Wiles and Khan have diametrically opposing views of the incidents. Ms. Wiles alleges that Khan engaged in inappropriate sexual comments and behavior – actions which Verizon asserts formed the basis for Khan's termination. In contrast, Khan asserts that Wiles' allegations are false and that she is a "disgruntled" employee who was encouraged by Verizon to make these allegations. (Doc. 3, ¶ 20; Doc. 21 at 2 n.1, 3). In fact, the specific incidents alleged by Ms. Wiles are incidents which Khan specifically denies even occurred. *Id.* It is a classic case of "he said/she said" which pits the interests of Ms. Wiles, Verizon's main witness, directly against those of Mr. Khan. Ms. Wiles' credibility is squarely at issue in this case and places plaintiff's counsel in the position of attacking a former client's credibility in order to advance the case of the present client, Mr. Khan.

Finally, Ms. Wiles has not consented to Freking & Betz's representation of plaintiff Khan. Ohio R. Prof. Cond. 1.9(a). (Doc. 20, Exh. A, Wiles Decl.)

Thus, all of the elements for disqualification under Ohio Rule 1.9(a) are satisfied and would prohibit Mr. Freking from representing Mr. Khan under the circumstances presented by this case. When the terms of Rule 1.9(a) are met, disqualification is mandatory. *R.E. Kramig Co., Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at \*4.

Khan ignores the applicability of the Ohio Rules of Professional Conduct in response to Verizon's motion to disqualify. Instead, he relies on the common law test set forth in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882 (6th Cir. 1990), and argues that

9

in the absence of an attorney-client relationship between the attorney (Freking and Betz) and the party seeking disqualification (Verizon), disqualification is not warranted. (Doc. 21 at 4, citing *Dana*, 900 F.2d at 889 (requiring "a past attorney-client relationship . . . between the party seeking disqualification and the attorney it seeks to disqualify")). As previously indicated, subsequent to its *Dana* decision, the Sixth Circuit directed courts to "look to the codified Rules of Professional Conduct for guidance" in resolving questions of attorney disqualification. *National Union Fire Insurance Co.*, 466 F.3d at 457. In the absence of any Sixth Circuit authority mandating application of the *Dana* test as advanced by plaintiff, the Court is bound to apply the Ohio Rules of Professional Conduct. By its terms, Rule 1.9(a) governs conflicts involving "former clients" and does not require that the party seeking disqualification actually be the former client.[4]

In sum, Ms. Wiles has not consented to the use of confidential information disclosed from her consultation with Mr. Freking on a matter substantially related to the instant case involving Mr. Khan, and Mr. Khan's interests are materially adverse to those of Ms. Wiles. Therefore, Mr. Freking's representation of plaintiff Khan would be in violation of Rule 1.9(a) of the Ohio Rules of Professional Conduct, warranting disqualification.

### B. Freking & Betz's Representation of Plaintiff Khan Violates Rule 1.10(a) of the Ohio Rules of Professional Conduct.

Ohio Rule of Professional Conduct 1.10 provides in relevant part, "While lawyers are associated in a *firm*, none of them shall represent a client when the lawyer *knows* or *reasonably*

---

[4] Ms. Wiles avers that she is prepared to file a motion to intervene in this case to protect her interest in disqualifying Freking & Betz from representing Mr. Khan. (Doc. 22, Exh. A, Wiles Suppl. Decl., ¶ 7). In the event the Court declines to adopt the recommendation of the undersigned Magistrate Judge, Ms. Wiles should be permitted to intervene to assert the disqualification issue on her own behalf.

*should know* that any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present significant risk of materially limiting the representation of the client by the remaining lawyers in the *firm*." Ohio R. Prof. Cond. 1.10(a) (emphasis added). As explained above, a member of the Freking and Betz law firm practicing alone, *i.e.,* Randolph Freking, would be prohibited from representing Mr. Khan under Rule 1.9(a) given his previous attorney-client relationship with Ms. Wiles. Under Rule 1.10(a), based on Mr. Freking's conflict of interest, the disqualification must be imputed to the entire firm of Freking & Betz.[5]

Plaintiff Khan asserts that Messrs. Reul and Allison, his current counsel, had no knowledge of Mr. Freking's prior representation of Ms. Wiles and have not spoken to Mr. Freking regarding the matter. (Doc. 21 at 3, Allison Aff. ¶ 2, Reul Aff. ¶ 2). Plaintiff appears to suggest that because his current counsel had no actual knowledge of Mr. Freking's consultation with Ms. Wiles, they should not be disqualified. This assertion alone does not rebut the presumption of shared confidences by Mr. Freking and the Freking and Betz law firm under Rule 1.10.

First, the express terms of Rule 1.10(a) do not require "actual" knowledge of a conflict prohibiting representation under Rule 1.9. The rule only requires that a lawyer "reasonably should know" of the conflict under Rule 1.9.

Second, this Court rejected a similar argument in *OneBeacon American Ins. Co. v. Safeco Ins. Co.,*, No. 1:07-cv-358 (S.D. Ohio March 31, 2009) (Weber, J.) (Doc. 49). In *OneBeacon*, Attorney Bechhold, the defendant company's attorney, had previously represented the plaintiff

---

[5] Plaintiff does not argue that the exception to imputation under Rule 1.10(a) is present in this case, *i.e.,* that the conflict is based on a personal interest of a lawyer (Mr. Freking).

company in "substantially related" insurance proceedings. The Court determined that Mr.
Bechhold was disqualified from representing the defendant company under Ohio R. Prof.
Conduct 1.9(a) because the defendant's interests in the case were materially adverse to those of
the plaintiff and the plaintiff had not consented to Bechhold's representation of the defendant.
*OneBeacon American Ins. Co.,* No. 1:07-cv-358 (Doc. 49 at 2).

> Mr. Bechhold's firm, Thompson Hine, then moved to substitute two new Thompson Hine
lawyers in place of Bechhold. Both lawyers asserted they had no communications with Bechhold
about the case and had never participated in the representation of the plaintiff company. Both
also promised to strictly follow the firm's screening procedures to prevent access to the
plaintiff's confidential information. Despite these assurances, the Court determined that under
the express terms of Rule 1.10(a), all members of the Thompson Hine firm were prohibited from
representing the defendant company. Although Thompson Hine offered to employ screening
procedures to protect the confidentiality of the plaintiff's information, the Court found that such
procedures had yet to be implemented and, more importantly, there was no legal precedent for
employing a screening device where the conflicted attorney and the designated substitute
attorneys "were always in the same firm." *Id.* at 9. The *OneBeacon* Court recognized the
screening exception to imputed disqualification was limited: "[O]nce an attorney is disqualified
under Ohio R. Prof. Cond. 1.9, a new attorney in his firm cannot avoid disqualification by
'screening' no matter how diligently." *OneBeacon American Ins. Co.,* No. 1:07-cv-358 (Doc. 49
at 9) (citing *National Union Fire Insurance Co. v. Alticor*, 466 F.3d 456, 459 (6th Cir. 2006)).
Thus, the *OneBeacon* Court concluded that the disqualification of one member of the Thompson
Hine firm under Rule 1.9(a) mandated disqualification of the entire firm under Rule 1.10(a).

Like the attorneys in *OneBeacon*, Mr. Khan's attorneys in this matter were "always in the same firm" as Ms. Wiles' attorney and are therefore subject to the rule of imputed disqualification under Ohio Rule of Prof. Conduct 10.1. Even if the firm employed screening measures to preserve the confidences of Ms. Wiles, Rule 10.1 would still require disqualification of Messrs. Reul and Allison. Although disqualification would deny plaintiff Khan his choice of representation, this is not a case involving a unique aspect of the law such that only the law firm of Freking & Betz can provide specialized legal services. Plaintiff Khan has not demonstrated that disqualification would present a hardship in obtaining new counsel. *See OneBeacon*, No. 1:07-cv-358 (Doc. 49 at 10).

### C. The Court Should Not Permit Outside Counsel to Cross-examine Ms. Wiles.

Plaintiff Khan argues that if a conflict of interest does exist, the Court should permit outside counsel to cross-examine Wiles during the trial of this matter and allow plaintiff Khan to retain the services of Freking & Betz as primary counsel. (Doc. 21 at 11, citing *Swanson v. Wabash, Inc.*, 585 F. Supp. 1094, 1097 (N.D. Ill. 1984) (permitting outside counsel to cross-examine witness where a conflict of interest arose between the defendant's counsel and one of the plaintiff's witnesses)). The undersigned is not bound by the *Swanson* decision, and plaintiff has not cited to any controlling authority from the Sixth Circuit or this district supporting his request for outside counsel. Nor does the "remedy" proposed by plaintiff advance the underlying principle of client loyalty that Rules 1.9 and 1.10 were designed to protect.[6] It is the continued representation of Mr. Khan in a substantially related and materially adverse matter that breaches

---

[6] The rule of imputed disqualification set forth in Rule 1.10 is derived "from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Comment 2 to Ohio R. Prof. Cond. 1.10.

this duty of loyalty to Ms. Wiles. The prohibition against dual representation of clients with adverse interests is meant "to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party" or used by an attorney to give the present client an unfair advantage. *OneBeacon,* 2008 WL 4059836, at \*2; *see also Yates*, 209 F.R.D. at 150. The Freking and Betz firm has been privy to confidential information from Ms. Wiles and such knowledge could be used to Khan's advantage in this litigation, despite plaintiff's proposal to use outside counsel for the limited purpose of cross-examination. The undersigned therefore recommends that the Court deny plaintiff's proposed remedy of obtaining outside counsel for purposes of cross-examination of Ms. Wiles.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion to disqualify counsel (Doc. 20) be **GRANTED**.

2. Plaintiff's request for outside counsel to cross-examine Wiles during the trial be **DENIED**.

3. This case be **STAYED** for an additional 60 days to permit the plaintiff to retain new counsel.

Date: _9/8/2011_

_Karen L. Litkovitz_
Karen L. Litkovitz, Magistrate Judge
United States District Court

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FAISAL KHAN,
      Plaintiff,                                  Case No.  1:10-cv-118

     vs.                                       Weber, J.
                                              Litkovitz, M.J.

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS,
      Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15